IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **YORK INTERNATIONAL GROUP, et al.** | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-4778 |
| | : | |
| **CINCINNATI INSURANCE COMPANY, et al.** | : | |

**MEMORANDUM AND ORDER**

Kauffman, J.                                                                                  September  5 , 2007

Now before this Court is the Motion to Remand by Plaintiffs York International Corp., York Refrigeration Corp., Frigid Coil Co., and Frick, Inc. (hereinafter "the York Plaintiffs") and the Motion to Dismiss by Defendant Cincinnati Insurance Co. (hereinafter "Cincinnati").  For the reasons that follow, the Motion to Remand will be denied, and the Motion to Dismiss will be granted.

**I.  BACKGROUND**

The York Plaintiffs are corporate affiliates that design and manufacture refrigeration and air conditioning units.  Compl. ¶ 5, attached to Def.'s Notice of Removal at Ex. A.  On October 8, 2000, a refrigerated warehouse facility located in Philadelphia experienced a "catastrophic ammonia leak" in which approximately 10,000 pounds of liquid ammonia escaped from an air handler unit, causing damage to the warehouse and ruining millions of dollars of food stored in the facility.  Id. ¶ 8.  After the incident, a series of Pennsylvania state court lawsuits were filed and later consolidated (hereinafter "the Ammonia Leak Litigation") against the York Plaintiffs

1

and Refrigerated Design and Service, Inc. (hereinafter "RD&S").  Id. ¶ 9.  The York Plaintiffs were sued as manufacturers of the air handler unit, and RD&S was sued as the party that had designed the refrigeration system for the warehouse and had installed the York Plaintiffs' air handler unit as part of the overall refrigeration system.  Id.  During the Ammonia Leak Litigation, the York Plaintiffs asserted that they were entitled to contractual indemnification from RD&S based on a clause in the contract between RD&S and the York Plaintiffs (hereinafter "The Factor Agreement").  Id. ¶ 10.  At the time of the Ammonia Leak Litigation, RD&S was insured by Cincinnati and had notified its insurer about the indemnification clause in the Factor Agreement. Id. ¶ 11.  At a mediation hearing in 2003, Cincinnati settled with the plaintiffs in the Ammonia Leak Litigation on behalf of RD&S for a total of $5,800,000, leaving $200,000 in a reserve fund to address the indemnification claim of the York Plaintiffs against RD&S.[1]  Id. ¶ 13.  After a trial in the Ammonia Leak Litigation, a jury found the York Plaintiffs to be 75% at fault and RD&S to be 24.995% at fault for the ammonia leak; the York Plaintiffs later paid $6,280,000 to settle all claims with the ammonia leak plaintiffs.  Id. ¶ 15.

Prior to the jury trial, the York Plaintiffs moved for summary judgment against RD&S for indemnification for the costs of the Ammonia Leak Litigation pursuant to the indemnification clause in the Factor Agreement.  Id. ¶ 18.  After initially denying the motion without prejudice,

---

[1] RD&S had two insurance policies with Cincinnati: a Commercial General Liability Policy (hereinafter "CGL Policy") with a limit of $1 million and a Commercial Umbrella Liability Policy (hereinafter "CUL Policy") with a limit of $5 million.  Compl. ¶ 22. The CGL Policy provides coverage to RD&S for indemnification claims arising out of an "insured contract," defined in the policy as "[t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization."  CGL Policy § V(8)(f), attached to Compl. at Ex. D.

the trial court granted summary judgment in favor of the York Plaintiffs following the jury verdict, entering a judgment (hereinafter "Indemnification Judgment") against RD&S for $7,634,102.06, representing the York Plaintiffs' settlement costs of $6,280,000 plus $1,354,102.06 in attorneys fees and litigation expenses. Id. ¶¶ 18-19. RD&S appealed the Indemnification Judgment, which remains unpaid. Id. ¶ 20.

On September 19, 2006, the York Plaintiffs filed a declaratory judgment action in Pennsylvania state court against Cincinnati, alleging that Cincinnati's creation of the $200,000 reserve fund and failure to negotiate with them regarding the indemnification claim against RD&S constituted bad faith. Id. ¶¶ 33, 35, 36. Based on this alleged bad faith conduct, the York Plaintiffs sought a declaration that they are entitled to garnish any payments that would be payable from Cincinnati to RD&S in order to satisfy the Indemnification Judgment, that Cincinnati is required to indemnify and defend them beyond Cincinnati's policy limits with RD&S, that Cincinnati is obligated to reimburse the York Plaintiffs for all sums paid in defense of the Ammonia Leak Litigation, and that the York Plaintiffs are entitled to attorneys fees and costs.[2] Id. ¶¶ 37, 44, 51. On October 24, 2006, Cincinnati removed the action to federal court pursuant to 28 U.S.C. § 1441 based on diversity jurisdiction.[3] Def.'s Notice of Removal ¶ 10. On October 27, 2006, Cincinnati filed the instant Motion to Dismiss pursuant to Federal Rule of

---

[2] In the original Complaint, the York Plaintiffs included RD&S as a nominal defendant and explained that they asserted no claims against RD&S. Compl. ¶ 7. As discussed in greater detail below, the York Plaintiffs no longer identify RD&S as a nominal defendant and instead argue that RD&S is a necessary party to the declaratory judgment action. See Mem. of Law in Supp. of Pl.'s Mot. to Remand 1.

[3] Because RD&S was designated as a nominal defendant at the time of removal, its consent was not obtained prior to removal. See Def.'s Notice of Removal ¶ 11.

Civil Procedure 12(b)(6).  On November 13, 2006, the York Plaintiffs filed the instant Motion to Remand pursuant to 28 U.S.C. § 1447(c).

## II. MOTION TO REMAND

### A. LEGAL STANDARD

A defendant in a state court may remove his or her case to a United States District Court if that court has original jurisdiction over the action.  28 U.S.C. § 1441.  When removing a state case to federal court, it is the removing party who bears the burden of establishing federal jurisdiction.  See, e.g., Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990).  The statutes governing removal "are to be strictly construed against removal and all doubts should be resolved in favor of remand."  Id. (internal quotation marks omitted) (quoting Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987)).  Thus, "[i]f there is any doubt as to the propriety of removal, the case should not be removed to federal court."  Brown v. Francis, 75 F.3d 860, 865 (3d Cir. 1996).

As a general rule, diversity jurisdiction requires that all plaintiffs be diverse from all defendants.  See, e.g., City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69 (1941) (explaining that proper diversity jurisdiction exists when claim involves legitimate "controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side" (citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806))).  An exception to the complete diversity rule exists, however, when one party is a "nominal" or "formal" party; in such cases, the citizenship of the nominal party is ignored for diversity purposes.  See Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 461 (1980) ("[A]

federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."); Salem Trust Co. v. Mfrs.' Fin. Co., 264 U.S. 182, 190 (1924) (noting that right of removal "is not affected by the fact that one of the defendants is a citizen of the same State as the plaintiff, if that defendant is not an indispensable party to the controversy between plaintiff and defendant who are citizens of different States" (citing Barney v. Latham, 103 U.S. 205, 213 (1881))).  Additionally, when considering whether complete diversity exists, the Court may realign the parties in the case if it finds that their actual interests in the litigation do not conform to their designations as plaintiffs or defendants.  See, e.g., Chase Nat'l Bank, 314 U.S. at 69 (explaining that "[d]iversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants" because a court must search the record in order to properly align the parties according to their interests).

### B. ANALYSIS

In the instant case, the York Plaintiffs are citizens of both Delaware and Pennsylvania.[4]  Defendant Cincinnati is a citizen of Ohio.[5]  Defendant RD&S is a citizen of Pennsylvania.

---

[4] Specifically, Plaintiff York International Corp. is a corporation organized under Delaware law with its principal place of business in Pennsylvania.  Plaintiffs York Refrigeration Group, Frigid Coil Co., and Frick, Inc. are also corporations organized under Delaware law with their principal places of business in Pennsylvania.  Thus, the York Plaintiffs are collectively citizens of both Delaware and Pennsylvania.  See 28 U.S.C. § 1332(c)(1).

[5] The "direct action" provision of § 1332(c)(1), which would also make Cincinnati a citizen of Pennsylvania, is inapplicable to this case because the York Plaintiffs' bad faith claim is not a "direct action" within the meaning of the statute.  See, e.g., McGlinchey v. Hartford Accident & Indem. Co., 866 F.2d 651, 653 (3d Cir. 1989) ("[A] 'direct action,' as that term is used in § 1332(c), does not exist 'unless the cause of action against the insurance company is of

5

Because both the York Plaintiffs and RD&S are Pennsylvania citizens, the York Plaintiffs argue that this Court lacks jurisdiction due to a violation of the complete diversity rule. Cincinnati argues that RD&S is a nominal party whose citizenship should be ignored and that the complete diversity rule is therefore not violated.

Generally, a nominal party is "one that is 'neither necessary nor indispensable to join in the action.'" Mallalieu-Golder Ins. Agency, Inc. v. Executive Risk Indem., 254 F. Supp. 2d 521, 524-25 (M.D. Pa. 2003) (quoting Farias v. Bexar County Bd. of Trs., 925 F.2d 866, 871 (5th Cir. 1991)). The York Plaintiffs argue that RD&S is a necessary rather than a nominal party because its absence from the case would impair its ability to "protect its legally protected interest in the action." Mem. of Law in Supp. of Pl.'s Mot. to Remand 10. The York Plaintiffs contend that because they have obtained the Indemnification Judgment against RD&S in the amount of $7,634,102.06, RD&S has an interest in the instant litigation since it will be liable for the full Indemnification Judgment if the York Plaintiffs do not prevail against Cincinnati. Therefore, the York Plaintiffs argue, RD&S is a necessary party in order to protect its own interests as between Cincinnati and the York Plaintiffs.

Even assuming that RD&S is a necessary party under the York Plaintiffs' theory, however, the Court must also consider RD&S's actual interest in this litigation in order to decide whether it is properly considered a defendant. See Chase Nat'l Bank, 314 U.S. at 69. Although

---

such a nature that the liability sought to be imposed could be imposed against the insured.'" (quoting Myers v. State Farm Ins. Co., 842 F.2d 705, 707 (3d Cir. 1988))); Forston v. St. Paul Fire & Marine Ins. Co., 751 F.2d 1157, 1159 (11th Cir. 1985) ("[W]here the suit brought either by the insured or by an injured third party is based not on the primary liability covered by the liability insurance policy but on the insurer's failure to settle within policy limits or in good faith, the section 1332(c) direct action proviso does not preclude diversity jurisdiction.").

RD&S is designated as a defendant, it would benefit from a judgment for the York Plaintiffs since its liability would be reduced by any amount Cincinnati is required to pay directly to the York Plaintiffs.

Under Third Circuit law, a realignment question is to be decided by the "primary issue" test, "under which a court must first identify the primary issue in controversy and then determine whether there is a real dispute by opposing parties over that issue." Employers Ins. of Wausau v. Crown Cork & Seal Co., 942 F.2d 862, 864 (3d Cir. 1991); see also Ackerman v. Hook, 183 F.2d 11, 14-15 (3d Cir. 1950) (explaining that the necessary "collision of interest" between opposing parties must be decided by the primary issue in dispute rather than by "mechanical rules" (citation omitted)). In the instant matter, the primary issue is whether the York Plaintiffs may recover for an alleged failure on the part of Cincinnati to properly defend its client RD&S. RD&S has remained silent throughout this litigation; it is clear, however, that its interests align directly with the York Plaintiffs, as any recovery by the York Plaintiffs would offset the Indemnification Judgment.[6] In these circumstances, the Court will realign the parties to conform to their actual interests. See Chase Nat'l Bank, 314 U.S. at 69.

In Martin v. Universal Underwriters Co., 676 F. Supp. 77 (E.D. Pa. 1987), the district court was faced with a similar realignment issue. In Martin, a plaintiff brought a state court action on behalf of a decedent against two parties, Mace and Flynn, and obtained judgments against both. Id. at 78. The plaintiff then filed a declaratory judgment action in state court

---

[6] In its appeal from the Indemnification Judgment, RD&S asserted that it is unable to pay the judgment to the York Plaintiffs and that the judgment itself threatens its existence as a company. See Aff. of John Payne ¶¶ 3-6, attached to Mem. of Law in Supp. of Pl.'s Mot. to Remand at Ex. E. Therefore, while it has not taken a position in this litigation, it is clear that RD&S has an interest in having Cincinnati satisfy the Indemnification Judgment.

against an insurer to determine whether the insurer was responsible for insuring either Mace or Flynn.  The insurer removed the case to federal court, and the plaintiff thereafter voluntarily dismissed the action.  Id.  In order to comply with Pennsylvania Insurance Guaranty Ass'n v. Schreffler, 520 A.2d 477, 479 (Pa. Super. Ct. 1987) (explaining that Pennsylvania law requires plaintiffs to add insured parties as defendants in declaratory actions against an insurer), the plaintiff reinitiated the suit and named Mace and Flynn as defendants.  Martin, 676 F. Supp. at 78.  The insurer then removed the action to federal court, and the plaintiff moved to remand pursuant to 28 U.S.C. § 1441(b), arguing that removal was improper because Mace and Flynn were citizens of the state in which the case was originally brought.  Id.  Instead of remanding the case, the district court realigned Mace and Flynn with the plaintiff, noting that "[b]ecause plaintiff has already obtained judgments against the individuals, their interests do not collide with plaintiff's."  Id.  The court further explained that with regard to Mace and Flynn, "a decision in favor of plaintiff will reduce or eliminate their liability to satisfy the judgment," and because the insurer denied coverage as to both Mace and Flynn, "the interests of Mace and Flynn are congruent with plaintiff's and thus they are properly aligned as plaintiffs."  Id.

     As to the primary issue in this case–whether Cincinnati is liable to the York Plaintiffs as the insurer of RD&S–the York Plaintiffs and RD&S have identical interests.  Therefore, the Court will realign RD&S as a plaintiff in this proceeding, and remand is improper since complete diversity exists between the parties.

### III. MOTION TO DISMISS

#### A. LEGAL STANDARD

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court is required "to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). In deciding a 12(b)(6) motion, "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). A complaint will survive a motion to dismiss when it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007) (internal quotation marks omitted) (quoting Car Carriers v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984)).

In a diversity case, the Court is required to apply the choice of law rules of the forum state. See, e.g., Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Under Pennsylvania law, "the construction of a contract is governed by the law of the state where the contract was made." Crawford v. Manhattan Life Ins. Co., 221 A.2d 877, 880 (Pa. Super. Ct. 1966). Generally, "[t]he place of making an insurance contract is the place of delivery, where delivery is the last essential act." Id. (citing Ruhlin v. N.Y. Life Ins. Co., 106 F.2d 921, 923 (3d Cir. 1939)). In the present case, both the CGL Policy and the CUL Policy were delivered to RD&S in Pennsylvania; therefore, Pennsylvania law governs interpretation of both policies. See CGL Policy; CUL Policy, attached to Compl. at Ex. F. Under Pennsylvania law, "[t]he task of

9

interpreting a contract is generally performed by a court rather than by a jury." Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983).

In the Complaint, the York Plaintiffs offer three theories of recovery against Cincinnati. First, they argue that they are judgment creditors of RD&S and therefore have the right to garnish payments beyond the policy limits due to Cincinnati's alleged bad faith in settling on behalf of RD&S. See Compl. ¶¶ 30-37. The York Plaintiffs next argue that they are "additional insureds" under the CGL Policy and/or the CUL Policy and may maintain a bad faith action against Cincinnati as insured parties. See id. ¶¶ 45-51. Finally, they argue that they are contractual indemnitees of RD&S and are therefore entitled to indemnification from Cincinnati based on its alleged bad faith in settling the prior litigation. See id. ¶¶ 38-44.

B. ANALYSIS

    1. **Right to Garnish Based on Bad Faith**

Under Pennsylvania law, a judgment creditor may not institute a garnishment action against an insurer based on a theory of the insurer's bad faith in dealing with the debtor-insured absent a formal assignment of the bad faith claim by the debtor-insured.[7] See Brown v. Candelora, 708 A.2d 104, 113 (Pa. Super. Ct. 1998) ("[W]e conclude that Pennsylvania should be added to the many courts which have specifically addressed and rejected the argument that an

---

[7] Based on a theory of fiduciary duty, an insured party may recover the full judgment from an insurer who acted in bad faith in handling the claim, even if the amount of the judgment exceeds the policy's limits. See, e.g., Gedeon v. State Farm Mut. Auto. Ins. Co., 188 A.2d 320, 322, 410 Pa. 55, 59 (Pa. 1963). Therefore, the fact that Cincinnati exhausted its policy limits in the Ammonia Leak Litigation would not preclude liability to RD&S if it did, in fact, act in bad faith.

injured plaintiff may proceed by way of a garnishment or direct action, against the tortfeasors' insurer, seeking a recovery in excess of the policy limits based on an alleged bad faith breach of the insurer's duty to the insured tortfeasor." (listing cases)); see also Marks v. Nationwide Ins. Co., 762 A.2d 1098, 1101 (Pa. Super. Ct. 2000) (following Brown and finding that assignment is necessary for a claimant to proceed directly against an insurer on a bad faith claim).

The York Plaintiffs have not alleged that RD&S has made an assignment of its bad faith claim. Instead, they make several arguments as to why Brown and its progeny do not apply to this case. First, they argue that because they are filing a declaratory action rather than a garnishment action, any bad faith claim between RD&S and Cincinnati will be "liquidated" by virtue of a judgment in the declaratory action fixing damages for the bad faith conduct.[8] Whether or not a successful action by the York Plaintiffs would liquidate the bad faith claim, they have no standing to bring such an action absent assignment by RD&S. See Marks, 762 A.2d at 1101 (explaining that Brown "held that a third party may not maintain a bad faith action against a tortfeasor's insurer *without first obtaining an assignment from the tortfeasor*" (emphasis added)).

The York Plaintiffs also argue that this Court is bound by Shaw v. Botens, 403 F.2d 150 (3d Cir. 1968). In Shaw, the Third Circuit, faced with no state decision directly on point, predicted that Pennsylvania law would permit a claimant to bring a garnishment action against an insurer "to determine the validity of the alleged claim of the judgment debtor against the

---

[8] The York Plaintiffs argue that Brown has been limited expressly to cases where the claim is unliquidated, relying on Sevast v. Kakouras, 841 A.2d 1062 (Pa. Super. Ct. 2003), rev'd on other grounds, 915 A.2d 1147 (Pa. 2007). However, Sevast did not involve garnishment of a bad faith claim against an insurer; the issue in Sevast was whether a restitution claim was, like the bad faith claim in Brown, properly considered unliquidated and not subject to attachment. Id. at 1066. Sevast in no way limited the holding of Brown, and therefore its holding as to a restitution claim is irrelevant to the case at bar.

garnishee-insurer." Id. at 155.  The York Plaintiffs argue that because Shaw has never been overruled, this Court is bound to follow it.  The Shaw decision, however, has been criticized by the Pennsylvania Supreme Court, and the Pennsylvania intermediate appellate courts have expressly rejected it as a correct statement of Pennsylvania law.  See Johnson v. Beane, 664 A.2d 96, 98 n.2, 541 Pa. 449, 453 n.2 (Pa. 1995) (explaining that "[t]here is no basis in law" for a garnishment proceeding against an insurer based on a bad faith claim and finding Shaw's prediction of Pennsylvania law to be "inaccurate"); see also Brown, 708 A.2d at 110 n.5 (agreeing that Shaw was "wrongly decided").  In West v. American Telephone & Telegraph Co., 311 U.S. 223, 237 (1940), the Supreme Court held, "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."

  Finally, the York Plaintiffs argue that Brown has been overruled by Egger v. Gulf Ins. Co., 903 A.2d 1219, 588 Pa. 287 (Pa. 2006).  The issue in Egger was "whether an assignee has standing to sue an insurer where the insured assigned its interest in an insurance policy without the prior consent of the insurer, contrary to the requirement in the policy."  Id. at 1220, 588 Pa. at 288.  The Egger opinion neither addressed Brown nor questioned Brown's basic premise: that a plaintiff must have an assignment before bringing a bad faith claim against an insurer.  The question in Egger was whether an assignment was valid under a particular policy prohibiting assignment without consent from the insurer.

### 2. Additional Insureds

Next, the York Plaintiffs contend that they qualify as "additional insureds" under the CGL Policy and/or the CUL Policy between RD&S and Cincinnati. Under the CGL Policy, an "additional insured" is any person or organization which RD&S is obligated to add as an additional insured pursuant to "[a] written contract or agreement" or "[a]n oral agreement or contract where a certificate of insurance showing that person or organization as an additional insured has been issued." See Automatic Additional Insured Endorsement to CGL Policy ¶ 1, attached to Compl. at Ex. E. The York Plaintiffs claim that by virtue of the Factor Agreement, they are entitled to "additional insured" status. In pertinent part, the Factor Agreement reads as follows[9]:

> Factor agrees to procure and maintain during the term of this Agreement insurance in companies satisfactory to Frick for the protection of the Factor and Frick as their interests appear in amounts not less than those specified below: Automobile Liability and Property Damage insurance in the amount of Three Hundred Thousand Dollars ($300,000) for injury or death of one person in any one accident, and Five Hundred Thousand Dollars ($500,000) for such injuries or death in one accident, and Three Hundred Thousand Dollars ($300,000) Property Damage Liability for each accident.

Factor Agreement ¶ 8(E), attached to Compl. at Ex. A. The York Plaintiffs argue that the Factor Agreement requires RD&S to provide commercial liability coverage and that because the Factor Agreement is a "written contract or agreement," they are also additional insureds under the CGL Policy between RD&S and Cincinnati.[10] Cincinnati argues that

---

[9] In the Factor Agreement, "Factor" and "the Factor" refer to RD&S. "Frick" includes all York Plaintiffs.

[10] The York Plaintiffs for the first time raise an alternative argument: that discovery is necessary to determine whether a certificate of insurance was ever issued to the York Plaintiffs and whether such a certificate named them as additional insureds under the CGL policy and the

according to the above-quoted language from the Factor Agreement, RD&S is required only to provide Automobile Liability and Property Damage coverage and is not obligated to provide general commercial liability insurance to the York Plaintiffs. Therefore, Cincinnati argues, the terms of the Factor Agreement preclude the argument that RD&S is obligated to name the York Plaintiffs as an additional insured under the CGL Policy.

The York Plaintiffs contend that the Factor Agreement specifies monetary limits for only two types of coverage (automobile and property damage), but does not limit the types of coverage RD&S is required to provide.[11] Recognizing that the Factor Agreement nowhere specifies that RD&S must obtain general commercial liability coverage for them, the York Plaintiffs argue that the phrase "as their interests may appear" requires RD&S to include them as additional insureds under the policy with Cincinnati. In support of this argument, they cite Mobil Oil Corp. v. Maryland Casualty Co., 681 N.E.2d 552, 555 (Ill.

---

CUL policy. In the Complaint, however, the York Plaintiffs failed to allege that such a certificate was ever issued, and the Court will not look outside the Complaint for possible facts that would entitle York Plaintiffs to claim "additional insured" status. See, e.g., U.S. Claims, Inc. v. Flomenhaft & Cannata, LLC, 2006 U.S. Dist. LEXIS 90074, at *19 (E.D. Pa. Nov. 14, 2006) (declining to consider an argument first raised in response to a motion to dismiss because the amended complaint was "completely devoid of the factual allegations necessary to establish" the new argument).

[11] The phrase "Automobile Liability and Property Damage insurance" refers to one specific type of coverage: claims for "bodily injury and property damage arising out of a collision with the automobile of the insured or other covered individuals." Allstate Ins. Co. v. Young, 923 F. Supp. 1559, 1560 (S.D. Ga. 1996); see also Am. Auto. Ins. Co. v. Mack, 34 F. Supp. 224, 225 (E.D. Ky. 1940) (describing an insurance policy providing bodily injury and property damage coverage for automobile use as "the ususal contract policy of automobile liability and property damage insurance"). The Agreement's specific coverage limits on bodily injury and property damage for each "accident" indicate that "Property Damage" as used in the Agreement is not a separate type of insurance but is instead part of the automobile liability insurance. Factor Agreement ¶ 8(E).

App. Ct. 1997), a case in which Mobil Oil contractually required a primary insured to obtain a liability insurance policy with a minimum coverage of $250,000 for each occurrence of bodily injury and to name Mobil Oil and its affiliates under the required policy "as their interests may appear." In a later dispute between Mobil Oil and the primary insured's carrier, the insurer argued that "as their interests may appear" limited its coverage of Mobil Oil to only $250,000. Id. at 559. The Illinois Court of Appeals rejected this argument, finding that the contractual language specified $250,000 as the minimum amount of coverage and that the phrase "as their interests may appear" did not provide any basis to limit Mobil Oil's coverage. Id.

The York Plaintiffs' reliance on Mobil Oil, however, is misplaced in light of the contractual language in this case. In Mobil Oil, the parties did not dispute that the relevant contractual language covered the specific injury at issue: bodily injury. The only question was the correct amount of coverage, and the court concluded that the phrase "as their interests may appear" provided no basis for limiting coverage. Mobil Oil did not hold that "as their interests may appear" broadened the amount of coverage to be provided by the insured, nor did it hold that the language imposed a duty on the insured to provide additional types of coverage. In this case, the York Plaintiffs urge the Court to find that "as their interests may appear" requires RD&S to provide a type of coverage nowhere mentioned in the Agreement. If, as drafters of the Factor Agreement, the York Plaintiffs intended to require RD&S to provide commercial general liability insurance, they easily could have included the appropriate language. Even if this Court found the Factor Agreement's limitations on a specific type of coverage to be ambiguous with respect to

15

any other types of coverage not expressly included, the Court is required to read any ambiguity against the York Plaintiffs.  See, e.g., Profit Wize Mtkg. v. Wiest, 812 A.2d 1270, 1275 ("Where the language of the contract is ambiguous, the provision is to be construed against the drafter." (citing Cordero v. Potomac Ins. Co. of Ill., 794 A.2d 897, 900 (Pa. Super. Ct. 2002))).  Accordingly, the Court concludes that the York Plaintiffs are not "additional insureds" under the CGL Policy.

With respect to the Commercial Umbrella Liability Policy, an additional insured party is "[a]ny person, organization, trustee or estate with respect to which [RD&S is] obligated by written contract to provide insurance such as afforded by this policy" or who is covered by the CGL Policy.  CUL Policy § II(2)(b), (f).  Because, as discussed above, RD&S was not required to provide commercial liability insurance to the York Plaintiffs, the Court concludes that they are not "additional insureds" under the CUL Policy.

### 3. Contractual Indemnitees

The York Plaintiffs also argue that they are contractual indemnitees of RD&S and may therefore maintain an action against Cincinnati directly.  In Tremco, Inc. v. Manufacturers' Ass'n Insurance Co., 832 A.2d 1120, 1121 (Pa. Super. Ct. 2003), a plaintiff attempted to sue a roofing contractor's insurer on a bad faith theory despite the fact that the plaintiff was not a named insured under the policy between the contractor and its insurer.  Finding that the plaintiff's contract with the roofing contractor was an "insured contract" as defined in the policy between the contractor and its insurer (which thereby obligated the insurer to afford coverage for the "insured contract"), the court nevertheless

found the plaintiff could not proceed directly against the insurer as a third-party beneficiary of the insurance policy because, standing alone, an "insured contract" provision does not demonstrate the explicit intent necessary to confer third-party beneficiary status.[12]  Id. at 1122.  Finding no other language in the policy explicitly conferring third-party beneficiary status, the court found that the plaintiff was unable to proceed directly against the insurer.  Id.; see also Hicks v. Saboe, 555 A.2d 1241, 1243 (Pa. 1989) (explaining that an insurer's duty to an insured does not run to third parties and noting a limited exception for intended third-party beneficiaries of the policy).

       Thus, under Tremco, the fact that the CGL Policy contains an "insured contract" clause does not manifest sufficient intent to confer third-party beneficiary status upon the York Plaintiffs.  Even assuming that the Factor Agreement is an "insured contract" under the CGL Policy, this fact does not, under Tremco, afford the York Plaintiffs the right to proceed directly against Cincinnati.  Moreover, as discussed above, the York Plaintiffs are not additional insureds under the policy, nor is there any language in the policy that explicitly indicates an intent to make them third-party beneficiaries under the policy.  Therefore, the Court finds that the York Plaintiffs are not third-party beneficiaries of the CGL Policy and may not bring an action directly against Cincinnati.

---

[12]     Though the York Plaintiffs call themselves "contractual indemnitees" rather than "third-party beneficiaries" of the CGL Policy, they assert that they are "owed coverage from Cincinnati under the [CGL] Policy" even though they are not named as additional insureds in that policy.  Compl. ¶ 40.  Despite the different nomenclature, the York Plaintiffs' claim for coverage is the same as the claim at issue in Tremco.  See 832 A.2d at 1121 (explaining that the plaintiff sought a judgment against the insurer for bad faith "in refusing to defend and indemnify [the plaintiff] in the underlying lawsuit" and that the plaintiff relied on the "insured contract" provision to bring a direct action against the insurer).

**C.  CONCLUSION**

Accordingly, the York Plaintiffs' Motion to Remand will be denied, and Cincinnati's Motion to Dismiss will be granted.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **YORK INTERNATIONAL GROUP, et al.** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 06-4778 |
| | : | |
| **CINCINNATI INSURANCE COMPANY, et al.** | : | |

### ORDER

**AND NOW**, this   5th   day of September, 2007, upon consideration of Plaintiffs' Motion to Remand (docket no. 4), and Defendant's Opposition thereto (docket no. 7), it is **ORDERED** that the Motion is **DENIED**.

**IT IS FURTHER ORDERED** that upon consideration of Defendant's Motion to Dismiss (docket no. 3), Plaintiffs' Opposition thereto (docket no. 5), and Defendant's Reply (docket no. 6), the Motion is **GRANTED,** and the Clerk of the Court shall mark this case **CLOSED**.

BY THE COURT:


 /s/ Bruce W. Kauffman
**BRUCE W. KAUFFMAN, J.**

19